Judge Nicholas
delivered the opinion of the cnnrt.
This was an action of ejectment, in the name of the appellant as lessor, on the trial of which a verdict and judgment were rendered against him.
In support of his claim he gave in evidence a patent of 1799, to John Handley, (for 7500 acres) covering (400 acres) the tract sued for, and in the possession of the defendant, Huston, a decree against the heirs of Handley, a fi. fa. issued thereon, under W’hich the 7500 acres were sold and conveyed by the coroner in'1826 to one Crow, which were conveyed by a deed, dated in 1827, from Crow to Griffith, and a will of Shoemaker, by which the 400 acres were devised to his daughter, then the wife of defendant, Huston. He then proved that. Handley settled ■on the 7500 acres in 1802, and lived there till 1816, when he died, and when Griffith took possession and has lived there ever since. That Handley left four children of whom the wife of Griffith was one, with *386 whom he intermarried before Handley’s death. He then introduced witnesses whose testimony conduced to prove that previous to Shoemaker’s settlement on the land in contest, there had been no settlement or improvement there; he also read a deed from Samuel, one of the sons of John Handley, to himself and George Handley, for all the interest of Samuel in the estate of John Handley.
¿Title after-wards acquired, by vendor, without title, enures to vendee.
The defendants then read a deed from William Worthington to Shoemaker for the 400 acres in contest, dated in March, 1813, and proved that Shoemaker and the Hustons had held the possession thereof ever since. They offered to read a certified eopy of a deed for the same land from John Handley to Worthington, dated in 1796, which was proved by •subscribing witnesses in the county court in 1800. The court rejected the copy, but permitted parol testimony of the declarations of Handley of having sold to Worthington, and other parol testimony conducingto shew the same facts. For permitting which, plaintiff excepted, and moved the court to instruct the jury:
1st. That if Handley conveyed the land in contest in 1796, before the issuing of his patent, and he was not then in possession of the land, but the same was vacant and in possession of no one, that his deed conveyed no title to Worthington.
2nd. That the execution or contents of any such deed could' only be legally proved by some of the subscribing witnesses, or some one who had seen the deed and knew the hand writing of the grantor, or some one of the subscribing-witnesses.
The first of these instructions the court properly . refused to give; for though Handley had not title at ( the date of his deed, yet when he obtained title, it enured to the benefit of his grantee, and all persons claiming under him were estopped to deny he then had title.
Whether the court was also correct in refusing to give the second in the terms in which it is couched need not be determined; for the testimony which it was framed to meet, the court certainly erred in permitting, to be given, to the jury.
Contents oí a behoved01 pan™ unless affidavit oi its joss °.r clesexvcutie’nand stipulations t0 be estabof-soribin^vit^" nesses if to be had, if not by ]e£|hny; declara-0" tions of gractor &0-
There was no legitimate foundation laid, by proof of the loss or destruction of the deed, to authorize the introduction ol secondary and interior evidence, either of its execution or contents. The grantee, Worthington, was a defendant to the suit, and the least .that could have been required, was an affidavit from him of its accidental destruction, or if lost, that he had made due and proper search for it without avaii. In the absence of such preliminary proof the presumption is, that the original was in the posslfssion oi Worthington and of course, he was bound to produce it. Alter proof of the loss or destruction of the deed, we think Jbiundley’s verbal declarations and acknowledgments, might be legitimately used in aid ol" other proof and circumstances to shew its execution and contents. Should it he proved that there were subscribing witnesses, they should be produced, or their absence accounted for. But, upon their failure to recollect its execution or contents,- as appears to have been the case on the former trial, the party will by no means be precluded from supplying the deficiency of their testimony by other legitimate proof. A party’s rights cannot be made to depend upon the recollection of a subscribing witness, after the lapse of upwards of thirty yearsjt
-The court, at the instance of the defendants, gave, the jury the following instructions, in substance:
1st. That if Shoemaker was in possession, claiming under the deed from Worthington, at the time of the coroner’s sale, none of the land in contest passed by the coroner’s deed.
2nd. That Griffith could only recover,'the interest that passed to him by the deed from Samuel Handley, that is, one eighth.
. 3rd. That if Handley took possession of the 7500 acre tract, in 18.02, and continued iq possession thereofi-ill 1813, when Shoemaker took possession of the land in contest, claiming it as his own, and if Shoemaker’s possession was continued for more than five years and till his death, that the plaintiff’s right of entry was barred and' they should find for the defendants.
Land held in adversary possession, not subject to sale under execution.
Husband can recover in ejectment land of his wife’s without joining her in demise.
If estate devised, same with that which devisee would take as heir, the estate passes by descent not by purchase.
At common law, entry tolled by descent cast by statute, I 'Dig. 467, not tolled unless five year’s possession by disseizor noxi after disseizin without entry or continual claim bperson having title. No saving in «lalúte, otherwise at common law.
*388 The propriety of these instructions are called in question by the assignment of errors. We have not literally transcribed them, but have only stated enough to shew the legal points ruled or intended to be ruled by the circuit court. The instructions as given are very defective in their form, assuming facts and deducing inferences, purely within the prerogative of the jury: but, as these defects are so obviously the mere result of carelessness or haste, they need not be pointed out.
The first instruction was properly given. Land held in adversary possession was not the subject of sale under execution. McConnell vs. Brown, FMon. 480.
The propriety of the second is not so obvious. We cannot sec why the plaintiff’s recovery should have been absolutely restricted to the eighth derived from Samuel Handley. He had never parted with his own fourth which, he had in right of his wife and for which he could undoubtedly sue in his own name without joining her. From any view we have of the subject, the court erred in giving that instruction.
Upon the question of law arising out of the third instruction, we concur mainly, but not entirely in opinion with the circuit court.
The facts appear to present a complete case, (such as the books tell us must now he of rare occurrence) where the proprietor’s right of entry is barred by a descent cast, and he is driven to his droiturel action. They shew a disseizin of Handley by Shoemaker, a peaceable continued possession by the latter for five years, and then by his death, a descent of the land cast upon his heir.
The estate devised to Mrs. Huston by the will of Shoemaker, being' precisely the same as she would have taken as heir, according to a long establislrea and familiar rule of law, she takes by descent and not by purchase.
By the common law, if an abator, intruder or disseizor died in peaceable possession, the descent to his heir took away from the true owner his right of en *389 try, although such death happened recently after the acquisition of the land. But, by the statute of XXXII Hen. 8, c. 33, re-enacted in this State, I Digest, 467, it is provided, that the dying seized of the disseizor shall not toll the right of entry, unless the disseisor had peaceable possession for five years next after the disseizin, without entry or continual claim by the person entitled. The statute contains no saving, on account of any disability on the part of the claimant but, by the common law the entry was not tolled where the claimant at the time of disseizin and death of the disseizor, labored under the legal disability of infancy, coverture, imprisonment, or being beyond seas.
Husband and wife have right of entry into lands in right of wife of which they have been disseised,descent Casts, takes right of husband.
Disability of one parcener does not wave right of entry to such as la bom] ««dor no disibility t,je wg/ ,lcoraei
*389 Where, as in this case, the disseizee labored under no disability at the time of the disseizin, but died previous to the lapse of five years and before the descent cast, leaving his estate to parceners, some of whom labored under disability, the books,-so far as we can ascertain, have not expressly determined, whether the right of entry is saved to the parceners or not.
The question would not arise in this ease upon the disability of Mrs. Griffith, who was covert at the death of Handley. For it is said by Littleton, sec. 403, that if husband and wife, in right of the wife, have title and right to enter into lands and a descent thereof is cast upon the heir of the disseizor, the entry of the husband is taken away, though upon death of the husband the wife may enter.
But, one of the four heirs of Handley was a Mrs. Wheelock, who was covert at the death of Handley. The bill of exceptions does not shew when she became discovert, but if it should turn out on a subsequent trial that she became so after the death of Shoemaker, the question will arise, whether the right of entry is saved as to her, and if so, then whether the saving of her right saves that of the other parceners also.
Without determining in this case what would have been the effect, if all Handley’s heirs had been under disability at the time of his death and had so continued till the death of Shoemaker, we think that in an *390 alogy to the construction which has been given to the saving in tiie statute of limitations in the cases of ^vlarsteiler vs. McLean, Vil Crunch, 166; and Dickey vs. Armstrong, 1 Mar. 39, it must be determined that the plaintiff cannot obtain tiie benefit of the saving in this rule at common law, by reason of any tlisahility on tiie part ol Mrs. It heelock. The principle upon which tiie decisions in those cases are based, seems to have direct, application to this, and we feel authorized to say, tor tue same reason, in the absence oi express authority, that let the Uisooverlure of Mrs. Wheeiock have happened when it may, it cannot save the right of entry oi the plaintiff Griffith.
Hi^cizi», is the wrongful ri'htfuHen0 ait, ami an" usurpation of Extent oi (hsseiziii the ace'11 of0('íiss1í>'a'" hf hiJl'niire?1-
It still remains to he determined to what extent the entry of Handley’s heirs upon the 400 acres is This must necessarily depend upon the extent to which they .were disseized,
Without entering upon the vexed question as to what amounted toa disseizin as originally understood at tiie common law, the true solution of which ^01’^ Mansfield seems to have thought, I Burr. 60, was lost in the obscurity of antiquity, we will content ourselves, with a definition of disseizin as now understood and as the law has been acted on for centuries. According to Littleton, Coke &c. a disseizin may be said to be the wrongful ouster of the rightful tenant from the possession and an usurpation of the freehold. There are many acts which do not of themselves, amount to a disseizin, yet which for the purpose of affording a summary redress, the courts have permitted the party injured to elect to consider as a disseizin. But, for the purposes of the doctrine of descent cast, there must be an actual disseizin, not one which is merely so by construction or at the election of the party injured. Smith vs. Burtis VI John. 216. A bare entry, says Holt, I Salk. 246, without an expulsion, makes such a seizin only that the law will adjudge lmn in possession that has the right,, but it wilt not work a disseizin, without actual expulsion. (See Clark vs. Courtney, V Peters, 320.) The disseizin of Handley and his heirs by Shoemaker could have extended, therefore, no farther than the latter was actually possessed to the exclusion of *391 the former. How far this was, our own books, furnis!) a most satisfactory and conclusive answer. They determine that it was circumscribed by his actual enclosure. To that extent, only was the right of entry of Handlev’s heirs tolled hv the descent cast. The court consequently erred in not so restricting it in the instruction given to the jury.
Richardson. for plaintiff; Crittenden, Morehead and Brown, for defendants.
Judgment reversed, with costs, and cause remanded for a new trial, and further proceedings, consistent herewith.